**James M. BAGWELL**

v.

**SKYTOP RIG COMPANY et al.**

No. 604.

Court of Civil Appeals of Texas,
Corpus Christi.

May 27, 1971.

Jamail & Gano, John Gano, Houston, for plaintiff-appellant.

Anderson, Smith & Null, M. L. Null, Victoria, for defendants-appellees.

OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial that appellant take nothing against appellees.

This suit was instituted by James M. Bagwell, plaintiff-appellant against Skytop Rig Company, a corporation, and B. Weems

Moller, defendants-appellees, for damages on account of personal injuries allegedly suffered by Bagwell on July 5, 1961 when a derrick or drilling rig on which he was working at High Island in Galveston County, Texas, toppled over carrying him to the ground. Skytop was the manufacturer and Moller was the designer of the drilling rig in question. Bagwell sought recovery on the theories that as designed and manufactured the rig was not reasonably safe for the purposes for which it was intended to be used and that the defendants were liable in damages to plaintiff for his injuries proximately resulting from both negligence and breach of warranty by defendants.

The trial court submitted 23 special issues to the jury. Issues 22 and 23 were the damage issues and the answers thereto aggregated $51,000.00. The jury answered all of the remaining issues which were unconditionally submitted in favor of appellees. More particularly, the jury refused to find any primary ground of liability against appellees and answered the defensive issues of appellees against appellant. Judgment that Bagwell take nothing was rendered on the verdict.

Appellant asserts twelve points of error. The first four points assert in substance that the trial court erred in failing to grant appellant's motions for mistrial or new trial based on the conduct of appellees and of those for whose acts they were allegedly responsible in illegally attempting to influence one or more of the jurors and the jury to the prejudice and injury of the appellant. Appellant says that appellees were guilty of such misconduct with respect to their contact of the jury as to render improbable or impossible the rendition of a fair and impartial verdict in this case and which destroyed the inviolate characteristic of the right of trial by jury as provided by Article I, Section 15, Constitution of Texas, Vernon's Ann.St., and which was reasonably calculated to and probably did cause the rendition of an improper verdict. Appellant's points five through twelve assert that the court erred in submitting special issues numbers 14–21.

The case went to trial on January 19, 1970. On January 22, 1970, plaintiff rested his direct case and defendants started putting on their evidence. One of the witnesses called to testify by defendants was Mr. Homer Sparkman. That evening Mr. Louis M. Gasche, owner and president of Skytop, called Sparkman on the telephone. There is a conflict in the testimony of Gasche and Sparkman as to precisely what was said, but there is general agreement that Gasche told Sparkman that Bagwell had already been paid workmen's compensation. That same night Sparkman telephoned the juror Thomas D. Petru. There are also some conflicts as to precisely what was said in that conversation. Shortly thereafter juror Petru reported the conversation with Sparkman to the trial judge who told Petru that the matter would be taken up the next day. The following morning, Friday, January 23, 1970, the trial judge called all counsel together outside the presence of the jury and advised them of the telephone contact with juror Petru. The judge then interrogated juror Petru and also gave all counsel an opportunity to question him. Petru at that time testified in part as follows:

"THE COURT: All right, I am not going to put you on the witness stand, Mr. Petru, but pull a chair out. Your name is Thomas Petru?

THE WITNESS: Yes, sir.

THE COURT: You called me on the telephone last night, Mr. Petru?

THE WITNESS: Yes, sir.

THE COURT: And related to me the conversation you had with Mr. Sparkman?

THE WITNESS: He didn't say 'Sparkman.' He said, 'This is Homer. I am trying—'

THE COURT: Homer?

THE WITNESS: Yes, sir. Homer.

THE COURT: That's right, you did tell me about it. I want you to tell me again as near as you can what Homer, whoever he was, identified himself, what he said to you and about what time he called you.

THE WITNESS: What I would like to do, I would like to say something before I get to that.

THE COURT: Yes, sir.

THE WITNESS: I work for Mr. Cook. He is a Mobil consignee. I don't get my paycheck from Mobil, I get it from Mr. Cook. We have Mobil on our trucks and stuff like this. When I say I work for Mobil I do indirectly. So he called me and this was about twenty minutes to eight, and he said, 'Mr. Petru?' And I said, 'Yes'. He said, 'Do you work for Mobil?' I said, 'Yes'. He said, 'Are you their deliveryman?' I said, 'Right now I am. I work in the office but sometimes I make deliveries.' He said, 'This is Homer, and I do some work for your company, for Mobil.' When he said that I said, 'Yes'. When I said that he kind of got nervous then, and then he said, 'Were you up there on the jury today?' I said, 'Yes, sir.' He says, 'You know what,' he said, 'They didn't tell you this but they are not allowed to say nothing in the courtroom, but the insurance has taken care of everything.' I said, 'I am not allowed to say nothing like this.' And he kept on talking and he said, and I said, 'I am not going to say nothing.' And when he found he wasn't going to get anything out of me he said, 'Good bye,' and I said I don't know whether I will take and call you tomorrow morning or tonight and I called you tonight."

Petru then left the room and there was a further discussion between the judge and counsel. Petru was then called back into the room and the following took place:

"THE COURT: All right, Mr. Petru, I want to make a statement to you in the presence of the attorneys, and I am going to give them an opportunity to correct anything I say in case I don't say it the way it should be. I want to tell you first, the gentleman, it was highly improper for him to have contacted you.

THE WITNESS: Uh huh.

THE COURT: And I complimented you last night and thanked you for letting me know, and I want to repeat that today. The statement that this man made to you on the telephone with regard to this case is wrong.

THE WITNESS: Uh huh.

THE COURT: It is incorrect.

THE WITNESS: Well, is it—

THE COURT: The question I want to ask you, there is an instruction in the charge in the instructions I gave you, you were not to consider insurance in any way, whether anybody is covered one way or the other.

THE WITNESS: That was what I was going to say.

THE COURT: Now the statement made to you on the telephone is inaccurate, it is incorrect, and it is wrong, and I can't think of any other word that would add to that. Now, do you feel what this man said to you on the telephone would affect you in any way in trying to weigh the facts in this case?

THE WITNESS: Yes, sir.

THE COURT: Can you put what he said to you out of your mind; it is incorrect?

THE WITNESS: Yes, sir. I just wanted everybody to know about it.

MR. JAMAIL: And you did exactly right.

MR. FLY: Yes, you certainly did right.

THE COURT: Let me say this to you, Mr. Petru, you are under instructions not to talk about the case to anyone.

THE WITNESS: Yes, sir.

THE COURT: Now your wife was there and she heard this, so she has heard it.

THE WITNESS: She heard my end of it.

THE COURT: There is no problem there but I don't want you to say anything about this to anyone until I tell you it is all right.

THE WITNESS: Well, I mean she was there at the table and she couldn't help but hear.

THE COURT: That is no problem but I don't want—

MR. NULL: She doesn't know the effect of it. She doesn't understand it.

THE WITNESS: Okay.

MR. NULL: The Judge really means with these other jurors, don't say anything.

MR. JAMAIL: Mr. Petru, of course you realize well the position this puts us in?

THE WITNESS: Yes, sir.

MR. JAMAIL: Only you know whether or not you can give James Bagwell a fair trial after receiving this information.

THE WITNESS: Yes, sir.

MR. JAMAIL: Can you?

THE WITNESS: Yes, sir.

MR. JAMAIL: Let me tell you, do you understand what His Honor said, that what the man told you was false and wrong?

THE WITNESS: Yes sir.

MR. JAMAIL: Do you understand that?

THE WITNESS: If it was true, something like that, you all would have brought it out in Court.

MR. JAMAIL: Do you understand it is false and wrong?

THE WITNESS: Yes, sir.

MR. JAMAIL: And you can put that out of your mind?

THE WITNESS: Yes, sir.

MR. JAMAIL: With that, Judge, we don't have any alternative but to proceed with the jury."

The trial of the case was then resumed before the jury, at which time the judge made a statement to the jury in part as follows:

" * * * And the case has lasted somewhat longer than I had anticipated. At the same time matters like this ought not to be rushed. But sometimes when a case goes on a long time and everybody is milling around out in the hall we see each other and we sometimes get into conversations. And I have admonished you a number of times you must not talk about the case, and I was just wondering if anyone has talked to any of you or about this case while it has been on trial?" (No answer of the jury).

The trial continued throughout the same day (Friday) with the court also separately continuing the investigation of the contact with juror Petru. Both Sparkman and Gasche were interrogated by the court and counsel out of the presence and hearing of the jury. After a recess of the trial over the weekend, counsel for the defendants on Monday, January 26, 1970, in the presence of the judge and opposing counsel, offered to excuse the juror Petru. Plaintiff's attorney then said: "We object, your Honor. He said he could be fair." After further colloquy between the judge and counsel, plaintiff's attorney further stated in substance that he would waive objection to the juror Petru for anything happening up to that time but was not waiving jury misconduct subsequent to that. On the same date the juror Charlie L. Milberger was excused by the court upon the agreement of all parties due to his illness, and the trial continued with eleven jurors, also by agreement of all parties.

The evidence closed on January 27, 1970 and the case was submitted to the jury on that date after argument of counsel and the charge of the court. The verdict was returned on January 28, 1970. On February 16, 1970, some 19 days after the verdict, plaintiff filed his motion for mistrial based upon the witness-juror contact hereinbefore discussed and its alleged detrimental effect. Plaintiff had not prior to filing that motion for mistrial urged any objection or motion on such account and particularly did not object prior to the close of the evidence. The trial court conducted a hearing on plaintiff's motion for mistrial on April 10, 1970, at which time the judge heard arguments of counsel and overruled it on July 6, 1970. No additional evidence to that taken during the trial of the case was offered or received by the trial court.

Plaintiff also filed a motion and amended motion for new trial. However, there was no hearing held in connection with same and the amended motion for new trial was overruled by operation of law. There was no showing of any kind that there was any misconduct during the deliberations of the jury.

Appellant's contentions that the trial court should have granted a mistrial or a new trial, pursuant to his motions for such relief, on account of the contact with juror Petru are replied to by appellees' counterpoints 1–4. Appellees say in substance that (1) appellant waived his right to raise such juror contact as a basis for a mistrial, new trial or reversal by failing to object to same after it was made known to the court and counsel for all parties and fully investigated; (2) that such contact is not shown to be of such prejudicial nature as was reasonably calculated to cause and probably did cause rendition of an improper judgment; (3) the motion for mistrial was properly overruled, and (4) appellant is estopped to complain of the trial going on after the juror contact had been fully investigated and he asked the court to proceed. We agree with the contentions made by appellees under their counterpoints 1, 2 and 3.

Because of our holdings on those points we need not reach appellees' counterpoint 4.

■ The impropriety relied on by appellant for reversal in this case was a witness-juror contact, i. e., the telephone call from the witness Sparkman to the juror Petru. The contact was promptly brought to the attention of the trial judge who, in turn, disclosed it to counsel for all parties. The juror was questioned by the judge and by counsel for appellant. Counsel for all parties were also given opportunity to and did question Sparkman, Gasche, and Mr. Mike Flynn, who was a claims representative for the Century Insurance Company. The investigation of the court and counsel into the witness-juror contact (which was conducted outside the presence of the jurors, except as to Mr. Petru to the extent hereinabove indicated) was completed on Friday, January 23, 1970. Mr. Gasche was the last witness in connection with that phase of the case. At the conclusion of his cross-examination counsel for appellant stated: "Your Honor, we refer the entire matter to the Grand Jury for possible perjury action. Thats all I have." The Court then stated: "Okay, let's get on with the trial." The following Monday morning, January 26, 1970, the trial resumed and counsel for appellees offered to excuse the juror Petru. Counsel for appellant objected to such action stating: "He said he could be fair." Counsel for appellant further expressly waived objection to juror Petru but did not waive subsequent jury misconduct. At that time the circumstances surrounding the witness-juror contact had been fully developed. No other evidence was subsequently offered in such connection or with reference to any jury misconduct. Prior to verdict appellant did not make any objection to continuance of the trial because of the witness-juror contact or for any other reason. Under these circumstances we believe that appellant has not preserved error in connection with the witness-juror contact. Under the rules stated by our Supreme Court in Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277

(1958), if appellant had intended to rely on said witness-juror contact, he should have, at least, objected to it after the evidence was completed and before the case was submitted to the jury. Under *Condra*, it was unnecessary that a motion for mistrial be filed by appellant in order to complain of the witness-juror contact here involved. However, under that decision appellant was still required to make timely objection to such incident in order to obtain review of the alleged prejudicial errors now claimed by him. In this case it appears that appellant not only failed to make any objection on account of the incident mentioned but also on the morning of January 26, 1970 expressly waived any objection to juror Petru up to that time. There is no showing of any jury misconduct after that date. Under these conditions reversible error on account of the witness-juror contact is not presented. See City of San Antonio v. McKenzie Const. Co., 136 Tex. 315, 150 S.W.2d 989 (1941); Insurors Indemnity & Ins. Co. v. Brown, 172 S.W.2d 174 (Tex. Civ.App., Beaumont, 1943, wr.ref.); Andrews v. Dewberry, 242 S.W.2d 685, 689 (Tex.Civ.App., Ft. Worth, 1951, wr. ref. n. r. e.); McDonald, Texas Civil Practice, Sec. 11.21.4, Revised Volume; 37 Tex.Law Rev. 89; 41 Tex.Jur.2d, New Trial, § 8, pp. 35–38.

We also agree with appellees that appellant has not demonstrated that probable harm or prejudice resulted from the witness-juror contact. In *Condra*, the Supreme Court held in part, as follows:

"To say that the conduct of counsel probably caused the rendition of an improper judgment we would first be compelled to conclude from a review of the record that but for that conduct the jury would *probably* have answered the issues in such fashion as to impose liability on the defendant. It is not enough to say that the jury might *possibly* have done so. Aultman v. Dallas Ry. & Term. Co., 152 Tex. 509, 260 S.W.2d 596, 600. (Emphasis by the Supreme Court).

In the instant case we cannot say from a complete review of the record that but for the witness-juror contact the jury would probably have answered the issues in such fashion as to impose liability on appellees. The cases relied on by appellant in support of his first four points are all distinguishable from the instant case. Appellant's points 1–4 are overruled.

Appellant's points 5–12, which complain of special issues 14–21 being submitted to the jury, do not present reversible error for several reasons. First, appellant's objections to the charge of the court, including those made to the above-mentioned issues, were not properly preserved for review. The record reflects that prior to submission of the charge to the jury counsel for appellant dictated a number of objections to it which were later transcribed by the court reporter and included in the Transcript on Appeal. There is no showing that the transcribed objections were presented to the trial judge so that he could endorse his ruling and official signature thereon as is required by Rule 272, Texas Rules of Civil Procedure. See Kettle v. Smircich, 415 S.W.2d 935 (Tex.Civ.App., Corpus Christi 1967, n. w. h.) and cases therein cited. The statement of facts herein is approved by the trial judge but there is no reference therein to appellant's objections to the charge of the court. See State v. Turboff, 431 S.W. 2d 953 (Tex.Civ.App., Houston 1st 1968, n. w. h.). Under these conditions we cannot consider appellant's objections to the charge of the court. It also appears that special issues 14–21 were defensive in nature. If the favorable answers to appellees thereon are given full effect they furnish additional grounds for denying a recovery to appellant. But those answers could be completely disregarded and appellant would still not be entitled to judgment because primary liability was not established against appellees. The findings on issues 14–21 are not necessary to the judgment and any error concerning them is not shown to be material to disposition of this case. See Thompson v. Gibson, Tex.Civ.App., 290

S.W.2d 305, ultimately affirmed, 158 Tex. 231, 310 S.W.2d 564 (1958). Appellant's points 5–12 are overruled.

The judgment of the trial court is affirmed.