**Betty K. WOLFE, Appellant,**

v.

**SPEED FAB–CRETE CORPORATION INTERNATIONAL, Appellee.**

No. 17480.

Court of Civil Appeals of Texas, Fort Worth.

March 8, 1974.

Rehearing Denied April 5, 1974.

John Sieren, Jim Claunch, Fort Worth, for appellant.

Hooper, Kerry, Chappell & Broiles, and David F. Chappell, Fort Worth, for appellee.

## OPINION

BREWSTER, Justice.

This is a suit for damages for breach of a building contract.

The parties will be referred to here as they were in the trial court.

The plaintiff, Speed Fab-Crete Corporation International, entered into a written contract with the defendant, Betty K. Wolfe, which provided in part as follows:

"SPEED FAB-CRETE CORPORATION INTERNATIONAL *will furnish labor and material to do the following specified work as shown on plans drawn up by SPEED FAB-CRETE CORPORATION.* Work shall be done in accordance with the nationally accepted and approved methods and techniques known as the SPEED FAB-CRETE system . . . . " (Emphasis ours.)

Provisions of the contract followed outlining the various parts of the building that the plaintiff was to build. The building was to be used as a drive-in restaurant.

The following provision was contained in the contract reference to the roof system that plaintiff was to place on defendant's building:

"ROOF SYSTEM: Roof structure shall be of pre-cast concrete set on concrete beams as shown on plans. Three ply built-up roof mopped over ¾" fibre glass insulation board. Porch roof shall have three ply roof mopped to concrete deck. Three 4" × 4" downspouts on rear of building. There shall be approximately 130 lineal feet of mansard roof facia on top of building *as shown on plans.* The mansard roof shall be constructed of 24 gage paint grip metal screwed on to an angle iron super structure and properly mounted to the concrete roof." (Emphasis ours.)

The written contract did not state one way or another whether there were to be placed any columns within the building to aid in supporting the concrete roof that the contract called for to be placed on the building by the plaintiff.

However, it is undisputed that the plans for the building that were drawn up by Speed Fab-Crete Corporation International, as provided for in the first paragraph of the contract that is set out above, did call for three columns to be placed within building for the purpose of aiding in the support of the roof. Two of these columns were to be within walls and would not be visible after completion of the building, and the other column was to be located in what Mrs. Wolfe called her "cook line."

The plaintiff began construction of the building and at one point of construction Mrs. Wolfe observed some steel plates being placed at certain points on the concrete floor. She made inquiry as to what these plates were for and was advised that the three columns for support of the roof would be placed at those points. She then contacted Dave Bloxom, the president of the plaintiff corporation, advising him that she did not want any columns inside the building.

It is undisputed that the plaintiff stood ready, willing and able to continue with the building if allowed to place the three columns in it that were shown in the plans. The plaintiff's president admitted that the roof could be placed on the building without the columns, but that to do so would

increase his costs considerably. Plaintiff insisted on erecting the building with the three columns shown in the plans placed in it. Mrs. Wolfe refused to permit the plaintiff to proceed under those circumstances and got another contractor and he finished the building.

Speed Fab-Crete Corporation then filed this suit seeking to recover damages for a breach of the contract, plus attorney's fees on the theory that attorney's fees are provided for in the contract between the parties.

Mrs. Wolfe filed a cross-action alleging that plaintiff had breached the contract by refusing to build the building without the inside columns in it and sought to recover $2,500.00 from plaintiff alleging that her building costs were increased that much by plaintiff's breach.

Later plaintiff filed a motion for summary judgment and the trial court did render a partial summary judgment decreeing that defendant was liable on plaintiff's cause of action and that plaintiff was not liable on defendant's cross-action.

The record shows that the trial court granted this partial summary judgment in plaintiff's favor on the theory that the evidence showed as a matter of law that the plaintiff did not breach the contract upon the occasion in question, and that the undisputed evidence offered did show that Mrs. Wolfe breached the contract in two respects, namely: (1) she stopped plaintiff from performing the contract and from erecting the building as provided for in the contract and plans that were therein referred to; and (2) she failed to make the required payments on the contract as the work progressed that were therein provided for.

At a later hearing a jury trial was held and submitted to the jury were issues as to the amount of damages sustained by plaintiff and issues as to what would be a reasonable fee for plaintiff's attorney; (a) for handling the case through the trial court; (b) for handling it to the Court of Civil Appeals; and then (c) for handling it to the Supreme Court.

Based on the partial summary judgment and on the jury verdict the trial court rendered judgment for plaintiff and against Mrs. Wolfe for $14,372.00 damages, plus $1,600.00 for attorney's fees if there is no appeal, $1,950.00 for attorney's fees if appealed to the Court of Civil Appeals and $2,000.00 if it is appealed to the Supreme Court.

This appeal is by Mrs. Wolfe from that decree.

Mrs. Wolfe agreed in the contract to pay to plaintiff $20,000.00 for furnishing the labor and materials therein agreed upon. The $14,372.00 in damages that were awarded plaintiff in the judgment was arrived at by deducting from the $20,000.00 contract price the sum of $5,628.00, which sum the jury had found was the usual and fair cost of the materials and labor necessary and remaining to be furnished by plaintiff to complete the contract in question. The use of this measure of damages is not questioned on this appeal.

Mrs. Wolfe contends in her first three points of error that the trial court erred in granting the partial summary judgment because (1) there was a fact issue as to whether or not the contract plans and specifications provided for columns in the interior of the building to support the roof; (2) there was a fact issue as to whether or not Speed Fab-Crete Corporation International breached the contract; and (3) because there was a fact issue as to whether or not there was a mutual abatement of the contract.

We overrule these three points.

The following is from 13 Tex.Jur.2d, Contracts, Sec. 116, p. 276: ". . . if one instrument is made a part of another by reference, both instruments must be read and construed together." And the following is from 13 Tex.Jur.2d, Contracts, Sec. 117, at p. 278: "Under the doctrine of incorporation by reference, anoth-

er contract or instrument may properly constitute part of a written agreement. In such a case, both agreements must be read and construed together."

■ When the rules referred to are applied to the facts of this case we are convinced that the undisputed evidence in the case showed that the plans for the building, which were drawn by the plaintiff's employees, became, by reference, a part of the contract between the parties. This is true because that was the express agreement that the parties made. A reference to those plans shows that they called for placing the three columns inside the building to furnish support for the roof. See on this Delhi Pipeline Corporation v. Lewis, Inc., 408 S.W.2d 295 (Corpus Christi Civ. App., 1966, no writ hist.).

The undisputed evidence before the court therefore showed that Mrs. Wolfe breached the contract between the parties when she refused to permit plaintiff to complete the building in accordance with the agreement of the parties and the plans therefor referred to in such contract.

This breach alone was a sufficient basis for the trial court's action in granting the partial summary judgment.

Mrs. Wolfe's fourth point of error is that the trial court erred in granting the partial summary judgment to plaintiff on the basis that she had breached the contract by not paying sums of money due thereon under the "Method of Payment" provision of the contract as of March 15, 1970, and April 1, 1970. She says her contention is correct and that plaintiff was not entitled to a summary judgment by reason of this claimed breach because the evidence placed before the court by the parties at the hearing only created a fact issue as to the amount of money, if any, that she in fact owed on those dates.

■ We hold that Mrs. Wolfe's contention under this fourth point of error is correct, but that such claimed error is harmless because her breach of the con-

tract that is hereinabove referred to, in our discussion of her first three points of error, was alone a sufficient basis for the rendition of the partial summary judgment.

The "Method of Payment" provision in the contract is as follows:

"METHOD OF PAYMENT: Partial payments shall be made on the 1st. and 15th. day of each month in an amount within 95% of the value of all work completed and materials placed on the job site during the preceding period, payable in Fort Worth, Tarrant County, Texas. A late charge of 1% of the total of the invoice shall be made for late payments. Non-payment for work completed, as invoiced, will result in stoppage of work until payment is received. Upon completion of the work final payment shall be made in cash immediately upon receipt of our invoice, with interest at the rate of ten percent (10%) per annum charged on amount remaining unpaid ten days thereafter, together with reasonable attorney's fees and costs of collection if incurred."

■ Under this "Method of Payment" provision of the contract, before one could determine how much Mrs. Wolfe owed the plaintiff on any particular date and how much she should be billed for, you had to first determine what would be 95% of the value of all work completed and materials placed on the job site by plaintiff prior to the billing, and for which plaintiff had not been paid. In the absence of such a determination, you could not tell how much Mrs. Wolfe was at the time of the billing then obligated to pay to plaintiff. She would not be obligated to pay to plaintiff the amount of any of its billings unless it was first shown that the billings or invoices sent her were for amounts of money that she actually owed to plaintiff under the terms of the contract.

■ At the summary judgment hearing the evidence offered did not establish as a matter of law the value of the work completed by plaintiff and of the materials it placed on the job site prior to sending out

its bills to Mrs. Wolfe. This was essential in order to prove the amount she owed under the contract at the time she was sent those bills. In order to show the breach claimed it was necessary for plaintiff to prove that Mrs. Wolfe owed a certain amount which she failed to pay at the time provided for in the contract after being properly billed for it by plaintiff.

The evidence before the court on the issue was that plaintiff billed her on March 9, 1970, for $400.00 for work completed and materials placed on the job site up to that time. Plaintiff again billed her for this same work and material on March 31, 1970, and this time she was billed in the amount of $800.00. No added work was done or materials placed on the job site by plaintiff in the interval between those dates according to some of the evidence, but, even so, the last bill was for $400.00 more than the first one was for.

The mere fact that plaintiff billed her for those sums on those dates was not any evidence that would tend to establish the issue as to the value of the work completed and materials placed on the job site by plaintiff prior to the time of the billing.

The only other evidence that could possibly bear on the value issue was contained in the deposition of Dave Bloxom. He was the president and sole owner of the plaintiff corporation. He was obviously an interested witness. His opinions as to the value of the work completed and of the materials placed on the job site by plaintiff prior to the billings did not establish such value as a matter of law. His testimony on this issue is not so clear, direct and positive as to establish such value as a matter of law. The giving of the two bills to Mrs. Wolfe by plaintiff for different sums for the same work and materials is evidence that tends to discredit plaintiff's contentions as to the amount she actually owed at the time in question. See Holly Sugar Company of Hereford v. Aguirre, 487 S.W.2d 421 (Amarillo Civ.App., 1972, ref., n. r. e.); G-W-L, Inc. v. Juneau, 486

S.W.2d 812 (Beaumont Civ.App., 1972, ref., n. r. e.), and Stuart v. Stuart, 429 S.W.2d 163 (Houston Civ.App., 14th Dist., 1968, ref., n. r. e.).

In Mrs. Wolfe's fifth point of error she contends that the trial court erred in overruling her objections to the issues in the court's charge submitting the question of attorney's fees to the jury because the contract sued on here only provided for the recovery of attorney's fees upon Mrs. Wolfe refusing to pay the contract price after plaintiff had completed the construction of the building involved.

The special issues that are referred to in Mrs. Wolfe's point of error No. 5 are Issues Nos. 2, 3 and 4 of the court's charge.

Special Issue No. 2 inquired as to what would be a reasonable attorney's fee for plaintiff's attorney for his services through the trial; No. 3 inquired as to the amount of such fee for his services including an appeal through the Court of Civil Appeals; and Issue No. 4 inquired as to such fee where the services including handling an appeal to the Supreme Court.

Mrs. Wolfe objected to the submitting of each of those three issues on the ground that the contract sued on provided for payment of attorney's fees only upon completion of the work and non-payment and the evidence here shows that the work called for by the contract was not completed. Those objections are shown in the Fourth Supplemental Transcript that was filed in this case.

The judgment appealed from was signed and rendered by the trial court on April 27, 1973. The record shows that Mrs. Wolfe's objections to the court's charge were not filed in the trial court until October 9, 1973, which was about six months after the trial.

At no place in the record before us is it shown that these objections to the court's charge were ever presented to the trial judge for his consideration and the record does not show that he ever ruled on

those objections. This is all required by Rule 272, Texas Rules of Civil Procedure.

The law is that in the absence of a showing that transcribed objections to the trial court's charge were presented to the trial judge or acted on by him, such objections are not properly preserved for review by an appellate court. Rule 272, T.R.C.P.; Carr v. Gregory, 472 S.W.2d 819 (Corpus Christi Civ.App., 1971, no writ hist.); Permian Corporation v. Trumbull Asphalt Co. of Del., 472 S.W.2d 555 (Corpus Christi Civ.App., 1971, no writ hist.); Bagwell v. Skytop Rig Company, 468 S.W.2d 939 (Corpus Christi Civ.App., 1971, ref., n. r. e.), and Big Three Welding Equipment Company v. Roberts, 399 S.W.2d 912 (Corpus Christi Civ.App., 1966, ref., n. r. e.).

Because the matters complained of in Mrs. Wolfe's fifth point of error were not properly preserved for review, that point is hereby overruled.

In Mrs. Wolfe's 6th and 7th points of error she contends that the trial court erred in submitting issues to the jury inquiring as to what was a reasonable attorney's fee for plaintiff's attorney for handling the case to the Court of Civil Appeals and, in the next issue, to the Supreme Court, over Mrs. Wolfe's objections that there were no pleadings to support the submission of those issues.

Mrs. Wolfe's 8th point of error is that the trial court erred in overruling her objection to evidence concerning attorney's fees in the Court of Civil Appeals and in the Supreme Court.

We overrule Mrs. Wolfe's 6th, 7th and 8th points of error.

Plaintiff's pleadings were that the parties agreed that plaintiff would be entitled to attorney's fees if incurred. It then prayed that it recover a reasonable attorney's fee of $2,000.00 and such other and further relief to which it may show itself entitled.

Mrs. Wolfe did not except to those general pleadings.

We hold that a general pleading, seeking to recover a reasonable attorney's fee for the services of plaintiff's attorney in the case, included attorney's fees incurred in the appeal of the case, as well as those incurred in the trial court. See McDonald's, Texas Civil Practice, Sec. 12.07–B.

And in International Security Life Insurance Co. v. Spray, 468 S.W.2d 347 (Tex.Sup., 1971) the Supreme Court held that where a statute imposed on an insurance company liability for a "reasonable attorney fees" for collection of a loss on a policy, that the use of the words "reasonable attorney fees" in the statute included those incurred on an appeal of the case as well as those incurred in the trial court.

Mrs. Wolfe's 6th and 7th points of error also involve contentions that the court erred in overruling her objections to special issues contained in the court's charge.

Nowhere does the record show that her objections to such issues were ever presented to the trial court or that he ever actually ruled on such objections. In the absence of such a showing she has failed to preserve for appellate review the matters complained of in her 6th and 7th points of error. As hereinabove shown these are added reasons why we are required to overrule those two points of error.

The trial court's judgment is affirmed.