In re RAYMOND JAMES & ASSOCIATES, INC.; Raymond James Financial Services, Inc.; Robert Thomas Securities, Inc.; and Raymond James Financial, Inc., Relators.

Raymond James & Associates, Inc.; Raymond James Financial Services, Inc.; Robert Thomas Securities, Inc.; and Raymond James Financial, Inc., Appellants,

v.

Alicia Bowman; David Anderson Carp, as Trustee for L.E. Minor, Jr. and as Trustee for the Carp Family Trust; Charlene Carson; Maurice Carson; David Drutz; Lydia Drutz, Individually, as Trustee for the Rose Sussman Trust, and as Trustee for the Sussman Family Trust; Dana Drutz; Jeff Drutz; Karole Fedrick; Wedsel Groom; Angela Groom; Howard Hochman; Shirley Hochman; E.Z.

---

**312**

Jones; Lena Jones; Kinder Materials; Betty Kowis; Sam Raia; Teresea Raia; J. Mike Smith; Sadie Tineralla; David Shaw; Karen Shaw; Richard Zissa; Sharon Zissa; and Maria Garcia, Appellees.

Raymond James & Associates, Inc.; Raymond James Financial Services, Inc.; Robert Thomas Securities, Inc.; and Raymond James Financial, Inc., Appellants,

v.

Edward Cepiel, Individually and as Trustee for The Ed and Marie Cepiel Trust; Marie Cepiel, Individual and as Trustee for The Ed and Marie Cepiel Trust; Mike Atlas; Sid Atlas; Helene Atlas; Theodore Chesser; Melody Chesser; Lawrence Cohen; Jim Forrest; Christopher Forrest; James Gracey; Gary Grant; Eva Grant; Eleanor Lensky; Jerry Mendelson, Individually and as Trustee for the Mendelson Charitable Trust; Judy Offman; Plum Glen Partners; Stephen Perel; Francis Perel; John Perel; Philip Tannenbaum; Adele Tannenbaum; John West, Individually and as Trustee for Ouida West; Van W. Williams; Robbie W. Williams, Individually and as Trustee for The Williams Living Trust; and Viola Zabransky, Appellees.

Raymond James & Associates, Inc.; Raymond James Financial Services, Inc.; Robert Thomas Securities, Inc.; and Raymond James Financial, Inc., Appellants,

v.

Bill Ashworth; Sandra Ashworth; G. Edwin Brooks; Ahlene Brooks; Ronald Brooks; David Anderson Carp; William Chapline; Lynne Chapline; Charles Howard, Individually, as Trustee for the Julie Rivers Howard Drenner Trust, and as Trustee for the Chad Joseph Rivers Howard Trust (Ugma Trust); Lonnie Fedrick; James Goodin; Brad Klein; Stephanie Klein; Frederick T. Kuykendall, III; Mayberry Family Limited Partnership; Jim Mcingvale; Linda McIngvale; Melody Chesser, as Trustee for the Teddy Ralph Moore Residual Trust; Eddie Moore, Sr.; Eddie Moore, Jr.; One Dog Promotions, Inc.; Richard Reed; Denise Reed; Larry Rogovein; Melanie Rogovein, Individually, as Trustee for the Rogovein Family Revocable Trust, and as Trustee for the Rogovein Family Trust; Martin Rogovein; David Seeley; Susan Seeley; Gregory Wallace; and Hugh Weatherly, Individually and as Trustee for The Weatherly Family Trust, Appellees.

Nos. 01–03–00463–CV, 01–03–00532–CV, 01–03–00533–CV, 01–03–00389–CV, 01–03–00530–CV, 01–03–00531–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 1, 2006.

to compel arbitration of the plaintiffs' claims against the Raymond James defendants. We conclude that the federal arbitration act applies to this case. Therefore, we dismiss the three interlocutory appeals for want of jurisdiction. We conditionally grant the Raymond James defendants' petitions for writ of mandamus.

George T. Shipley, Baker & Botts, L.L.P., Linda J. Broocks, Laura Gibson, Jackie M. Gorham, Ogden, Gibson, White & Broocks, & Longoria, L.L.P., Houston, TX, for Appellants.

Joseph F. Archer, Law Offices of Joseph Archer, Jeremy Richard Stone, Ernest Boyd, Mehaffy Webber, P.C., Robert G. Taylor II, Law Offices of Robert Taylor, II, P.C., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices NUCHIA and KEYES.

## OPINION

SAM NUCHIA, Justice.

Appellants and relators Raymond James & Associates, Inc.; Raymond James Financial Services, Inc.; Robert Thomas Securities, Inc.; and Raymond James Financial, Inc. (the Raymond James defendants), filed motions to compel arbitration between the Raymond James defendants and 87 of the plaintiffs in this litigation. The trial court denied the motions, and the Raymond James defendants filed interlocutory appeals of that denial and petitions for writs of mandamus, asking this Court to order the trial court to withdraw its orders denying the motions to compel and

## BACKGROUND

More than 100 plaintiffs filed three separate lawsuits [1] against 15 defendants. The plaintiffs alleged various causes of action, including fraud and violations of the Texas and Federal Securities Acts. Eighty-seven of these plaintiffs, the real parties in interest (the Account Holders), had accounts with Robert Thomas Securities, Inc. or its successor, Raymond James Financial Services, Inc. These accounts were carried by Raymond James & Associates.

To open their accounts, the Account Holders signed a New Account Form, which stated just above the signature line,

> By signing below, I acknowledge that I have received, read, understand and agree to abide by all the terms and conditions set forth in the Client Agreement incorporated herein by this reference. The Client Agreement contains a binding arbitration clause and other provisions substantially affecting my rights. * * *I have detached and retained the Client Agreement for my records.* * *

The Client Agreement was revised and updated periodically, with the result that there were seven versions of the Client Agreement over the period of time that

---

1. The cases are *Douglas Bacon v. Mann Frankfort Stein & Lipp Advisors, Inc.*, No. 01–CV–126329 in the 240th District Court of Fort Bend County, Texas; *Edward and Marie Cepiel v. Mann Frankfort Stein & Lipp Advisors, Inc.*, No. 02–CV–11141, in the 56th District Court of Galveston County, Texas; and *Curtis and Lois Franz v. Mann Frankfort Stein & Lipp Advisors, Inc.*, No. 21399 JG 02, in the 239th District Court of Brazoria County, Texas. These cases were consolidated for pretrial purposes.

the Account Holders opened their accounts. All of these versions were substantially similar. They each defined "I," "me," "we," and "us" as "the undersigned and any other actual or beneficial owner of property in this account." They defined "you" and "your" as "Raymond James & Associates, Inc. and the introducing broker, if applicable." They had a choice-of-law clause that stated, "This agreement shall be construed in accordance with the laws of the State of Florida." The two latest revisions had expanded choice-of-law clauses stating the following: "This agreement and any accounts opened hereunder shall be construed, interpreted and the rights of the parties shall be determined in accordance with the internal laws of the State of Florida (without referencing Choice of Law provisions of Florida or any other state)." The Client Agreement further provided, "I understand that when I sign the Client Agreement, the Client Agreement becomes a legally binding contract between you and me."

The arbitration clause in the first three versions of the Client Agreement provided as follows:

> In a dispute or controversy ... between me and you (including your officers, directors, employees or agents and the introducing broker, if applicable) we agree to first endeavor to settle the dispute in an amicable manner by mediation at the request of either party. Thereafter, any unsettled dispute or controversy will be resolved by arbitration conducted before the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., or the American Stock Exchange, Inc., or other self-regulatory organizations (SRO) subject to the jurisdiction of the Securities and Exchange Commission (SEC) pursuant to the arbitration rules of the Exchange or SRO, and in accordance with the United States Arbitra-

tion Act (Title 9 of the United States Code).

The arbitration clauses in versions four and five were virtually identical to the first three, except that they specified that the mediation would be "before the National Association of Securities Dealers, Inc. at the request of either party." The sixth version was virtually identical to versions four and five, except that it changed "the United States Arbitration Act" to read, "the Federal Arbitration Act...." The seventh version eliminated the mediation requirement and provided,

> Any dispute or controversy, either arising in the future or in existence now, between me and you (including your officers, directors, employees or agents and the introducing broker, if applicable) will be resolved by arbitration conducted before the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., the American Stock Exchange, Inc., or other self-regulatory organizations (SRO) subject to the jurisdiction of the Securities and Exchange Commission (SEC) pursuant to the arbitration rules of the applicable SRO, and in accordance with the Federal Arbitration Act (Title 9 of the United States Code).

The Raymond James defendants filed a motion to compel arbitration and an amended motion to compel that added three Account Holders to the list of those who the Raymond James defendants contended were bound by an arbitration agreement. The Raymond James defendants attached, in support of their motion, the affidavit of J. Stephen Putnam. The affidavit stated,

1. My name is J. Stephen Putnam. I am over the age of eighteen (18) years and I am fully competent and duly authorized to make this affida-

vit. I have personal knowledge of the facts stated herein.

2. I am the President of Raymond James Financial Services, Inc. (formerly Robert Thomas Securities, Inc.), and I have knowledge regarding the procedures for opening new accounts through Raymond James Financial Services (formerly Robert Thomas Securities, Inc.), to be carried with Raymond James & Associates ("Raymond James").

3. The Plaintiffs listed on Exhibit A–1 signed the New Account Form incorporating the Client Agreement attached as Exhibit A–2. Their signature pages are attached as Exhibit A–3.

4. The Plaintiffs listed on Exhibit B–1 signed the New Account Form incorporating the Client Agreement attached as Exhibit B–2. Their signature pages are attached as Exhibit B–3.

5. The Plaintiffs listed on Exhibit C–1 signed the New Account Form incorporating the Client Agreement attached as Exhibit C–2. Their signature pages are attached as Exhibit C–3.

6. The Plaintiffs listed on Exhibit D–1 signed the New Account Form incorporating the Client Agreement attached as Exhibit D–2. Their signature pages are attached as Exhibit D–3.

7. The Plaintiffs listed on Exhibit E–1 signed the New Account Form incorporating the Client Agreement attached as Exhibit E–2. Their signature pages are attached as Exhibit E–3.

8. The Plaintiffs listed on Exhibit F–1 signed the New Account Form incorporating the Client Agreement attached as Exhibit F–2. Their signature pages are attached as Exhibit F–3.

Further, Affiant sayeth not.

___/s/___

J. STEPHEN PUTNAM

SWORN TO AND SUBSCRIBED before me, Notary, on this the *24th* day of February, 2003.

The affidavit was signed by the Notary Public.

The Account Holders filed a response to the motion to compel in which they argued, among other things, that there was no agreement to arbitrate. They attached, as exhibits, approximately 50 Account Holders' affidavits, which stated, in pertinent part, "I have neither signed nor was I provided with a copy of the Client Agreement, and I have not agreed to arbitrate any claims with Robert Thomas Securities, Inc., Raymond James Financial, Inc., Raymond James Financial Services, Inc. or Raymond James & Associates, Inc." By agreement of the parties and with leave of the trial court, the Account Holders supplemented their response with another 15 affidavits of Account Holders after the hearing.

The trial court conducted a hearing on the amended motion, which it denied. The Raymond James defendants filed interlocutory appeals of the trial court's order denying the motion to compel and petitions for writ of mandamus, contending that the trial court erred in denying the motion to compel arbitration.

## DISCUSSION

### Standard of Review

Mandamus is an extraordinary remedy, that will issue only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no adequate remedy by appeal. *In re Ford*

*Motor Co.*, 165 S.W.3d 315, 317 (Tex.2005) (orig. proceeding) (citing *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004)); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding); *In re Taylor*, 113 S.W.3d 385, 389 (Tex.App.-Houston [1st Dist.] 2003, orig. proceeding).

A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *See Walker*, 827 S.W.2d at 839; *In re Taylor*, 113 S.W.3d at 389. The abuse-of-discretion standard has different applications in different circumstances. *Walker*, 827 S.W.2d at 839. Because a trial court has no discretion in determining what the law is, which law governs, or how to apply the law, we review this category of discretionary rulings de novo. *See id.* at 840. In contrast, when we review a ruling that results from the trial court's having resolved underlying facts, we must defer to the trial court's factual resolutions and any credibility determinations that may have affected those resolutions and may not substitute our judgment for the trial court's judgment in those matters. *See id.* at 839–40.

### Agreement to Arbitrate

A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of the agreement. *In re Palm Harbor Homes, Inc.*, 129 S.W.3d 636, 641 (Tex.App.-Houston [1st Dist.] 2003, orig. proceeding). If one party denies that there is a binding arbitration agreement, the trial court may summarily decide whether to compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992) (orig. proceed-

ing). Whether there is an enforceable agreement to arbitrate is a question of law and is therefore reviewed de novo. *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding).

### Incorporation by Reference

This case hinges on whether the New Account Form effectively incorporates the Client Agreement by reference. An unsigned paper may be incorporated by reference into a contract. *Teal Const. Co. v. Darren Casey Interests, Inc.*, 46 S.W.3d 417, 420 (Tex.App.-Austin 2001, pet. denied) (citing *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex.1968)). "The specific language used is not important so long as the contract signed by the defendant plainly refers to another writing." *Id.* "An arbitration agreement is not invalid or unenforceable merely because it is contained in a document incorporated into the contract by reference." *Id.* (citing *D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 230 (Tex.App.-Corpus Christi 1992, writ dism'd w.o.j.)).

In this case, the Account Holders stipulated at the hearing on the motion to compel arbitration that they signed the New Account Form. However, they contend that the Client Agreement was not attached, as recited in the New Account Form, and they filed sworn affidavits stating that they had not been provided with a copy of the Client Agreement. Their affidavits did not state that they had not read the Client Agreement or that their signatures on the New Account Form were obtained by trickery or artifice.

A person who signs a contract is presumed to have read and understood the contract and to have fully comprehended its legal effect, unless he establishes fraud in the inducement or mental incapacity. *Nguyen Ngoc Giao v. Smith & Lamm*, 714

S.W.2d 144, 146 (Tex.App.-Houston [1st Dist.] 1986, no writ). Thus, we presume that the Account Holders both read and understood the legal effect of the New Account Form.

■ The New Account Form, in a statement just above the Account Holders' signature line, incorporates the Client Agreement by reference, plainly referring to the Client Agreement, which contains a binding arbitration clause. By their signatures, the Account Holders acknowledged that they had received, read, understood, and agreed to abide by the terms and conditions of the Client Agreement. Even if the Client Agreement was not attached to the New Account Form, and even if the Account Holders never saw the Agreement, and even if the Client Agreement was not signed, the Account Holders were nevertheless on notice that there was a Client Agreement, that it contained a binding arbitration clause, and that it was incorporated into the New Account Form by reference. We conclude that the Client Agreement was incorporated into the New Account Form by reference. We hold that the Raymond James defendants have established the existence of an arbitration agreement.

### Scope of the Agreement

The Raymond James defendants argue that the Account Holders do not dispute that their claims fall within the scope of the agreement. The Account Holders disagree, but they state their disagreement only in terms of their contention that there was no arbitration agreement. They do not address the scope of the agreement contained in the Client Agreement.

To determine whether a claim falls within the scope of an arbitration agreement, this Court looks at the facts alleged and considers whether the facts touch matters covered by the underlying agreement. *Hou–Scape, Inc. v. Lloyd,* 945 S.W.2d 202, 205 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding). Any doubts about the scope of the agreement must be resolved in favor of arbitration. *In re Palm Harbor Homes,* 129 S.W.3d at 641.

■ In this case, the arbitration clause is broad, providing, "In a dispute or controversy, either arising in the future or in existence now, between [the undersigned] and [Raymond James, Inc.] ... any unsettled dispute or controversy will be resolved by arbitration...." The Account Holders' complaints against the Raymond James defendants are directly related to the subject of the contract—securities transactions. We conclude that the Account Holders' claims are within the scope of the arbitration agreement.

### The Putnam Affidavit

The Account Holders contend, by "cross-point,"[2] that the affidavit of J. Stephen Putnam is defective because it does not state that the facts contained within it are "true and correct." They argue that this affidavit was the only evidence supporting the Raymond James defendants' claim that an arbitration agreement existed and that the affidavit should therefore be struck.

■ When an affidavit "reflects that it is based on personal knowledge and it is subscribed to and sworn before a notary public, it is not defective if, when

---

2. The Account Holders attempt to raise five "cross-points" in their response brief. These cross-points are not properly before us because the Account Holders have not complied with rule 52 of the Texas Rules of Appellate Procedure. *See* Tex.R.App. P. 52. Nevertheless, we will address those arguments raised in the cross-points to the extent that they respond to the Raymond James defendants' issues.

considered in its entirety, its obvious effect is that the affiant is representing that the facts stated therein are true and correct." *Texas Sting, Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 651 n. 8 (Tex.App.-San Antonio 2002, pet. denied); *see also Woods v. Applemack Enterps. Inc.*, 729 S.W.2d 328, 330 (Tex.App.-Houston [14th Dist.] 1987, no writ) (holding that obvious effect of affidavit made on affiant's personal knowledge and sworn before notary public is that affiant has sworn that facts are true and correct). As in *Woods,* the obvious effect of Putnam's affidavit was that he had sworn that the facts stated were true and correct.

The Account Holders also complain that the Putnam affidavit states that he had personal knowledge of procedures, but not of whether those procedures were followed, and that the affidavit contained the legal conclusion that the "New Account Forms incorporated the Client Agreements." These complaints are without merit.

The obvious purpose of Putnam's affidavit was to connect the executed New Account Forms with the proper Client Agreement, which Putnam could do because he had knowledge of the procedures that were to be followed. His statement, "the New Account Form incorporating the Client Agreement," was a simple statement of fact using the words of the New Account Form. We conclude that Putnam's affidavit sufficiently connected the Client Agreement with the New Account Form.

### Signatories to the Client Agreement

The Account Holders contend that, because they did not sign a Client Agreement (a fact that is uncontested), they cannot be bound by it. They argue that the language of the Client Agreement requires that it be signed: "I understand that when I sign the Client Agreement, this Client Agreement becomes a legally binding contract...."

▮▮▮▮ When one document is incorporated into another by reference, the two documents must be construed together. *Wolfe v. Speed Fab–Crete Corp. Int'l,* 507 S.W.2d 276, 278 (Tex.Civ.App.-Fort Worth 1974, no writ). Because the Client Agreement is expressly incorporated into the New Account Form, specifically advising the signatory that the Client Agreement contains a binding arbitration clause, signing the New Account Form was tantamount to signing the Client Agreement. Therefore, by signing the New Account Form, the Account Holder accepted the terms and conditions of the Client Agreement, including the arbitration provision.

### Unconscionability

▮▮▮ The Account Holders contend that the arbitration clause was unconscionable. But, they did not, as they claim, prove unconscionability in the trial court. They argue that the clause was unconscionable because they were not given copies of the Client Agreement, but that if they had been given such copies, the clause would be even more unconscionable because the Client Agreement states that it would not be effective unless signed, but had no signature line. The Account Holders cite no authority for this reasoning. The Account Holders have not established that the arbitration clause was unconscionable, and their argument is without merit.

### Participation of Non–Signatories

The Account Holders contend, in the alternative, that, if they are bound by the Client Agreement, it is with respect only to their claims against Raymond James & Associates and not the other Raymond James defendants. The Account Holders argue that the Raymond James defendants

produced no evidence that Robert Thomas Securities, Inc. and Raymond James Financial Services were introducing brokers and therefore are not included in the definition of "you" in the Client Agreement.

 Raymond James & Associates did not have to prove that the other three Raymond James defendants were introducing brokers to bring them under the umbrella of the arbitration clause in this case. When a signatory to a contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both non-signatories and a signatory of the contract, equitable estoppel allows the non-signatories to compel arbitration. *In re EGL Eagle Global Logistics, L.P.*, 89 S.W.3d 761, 765 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (citing *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 482 (Tex.App.-Dallas 2001, no pet.)).

In paragraph 34 of Plaintiffs' Second Amended Petition, the Account Holders state, "All Raymond James entities are collectively referred to as Raymond James." In paragraphs 86 through 88, the Account Holders allege various acts by Raymond James without distinguishing between the separate entities. In paragraphs 92 through 157, the Account Holders set out various causes of action and damages, referring only to "defendants" collectively. Thus, it is impossible to determine from the pleadings any separate complaints against the four Raymond James defendants.

We conclude that the Account Holders' pleadings preclude their challenge and that the four Raymond James defendants were entitled to enforce the arbitration clause.

### Application of Federal Arbitration Act

 The Account Holders complain that the Raymond James defendants did not prove the application of the Federal Arbitration Act.[3] The arbitration clause in the Client Agreement provides that the arbitration would be conducted in accordance with the United States (or Federal) Arbitration Act. Therefore, the parties have agreed to arbitrate under the FAA. *See In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (concluding that FAA applied because parties agreed to arbitrate under FAA). Furthermore, the Account Holders' complaints involve the sale of securities, and therefore involve interstate commerce. *See Eurocapital Group, Ltd. v. Goldman Sachs & Co.*, 17 S.W.3d 426, 430 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (stating that agreement dealing with sale of securities involved interstate commerce). Thus, the FAA applies to this dispute.

### CONCLUSION

The Raymond James defendants have established the existence of an arbitration agreement with the Account Holders and have shown that the Account Holders' claims fall within the scope of the agreement. The Raymond James defendants have also established that the Federal Arbitration Act applies to this arbitration. Accordingly, we hold that the trial court had no discretion to deny the Raymond

---

3. *See* 9 U.S.C.S. §§ 1–16 (West 1997 & Supp. 2005). A party may file an interlocutory appeal of a trial court's denial of an application to compel arbitration under the Texas General Arbitration Act. Tex. Civ. Prac. & Rem.Code Ann. § 171.098 (Vernon 2005); *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 988 S.W.2d 731, 732 (Tex.1998). Mandamus is the appropriate remedy when a trial court improperly denies a motion to compel arbitration under the federal statute. *In re Valero Energy Corp.*, 968 S.W.2d 916, 916–17 (Tex. 1998).

James defendants' motion to compel arbitration. We conditionally grant the writ of mandamus and order the trial court to vacate its order denying the Raymond James defendants' motion and to enter a new order compelling arbitration of the Account Holders' claims against the Raymond James defendants. We are confident that the trial court will comply, and the writ will issue only if it does not.